UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
DONALD C. MacPHERSON, 10 BATHING
BEACH CO., INC., 16 BATHING BEACH
CO., INC.,

                     Plaintiffs**,**         **MEMORANDUM AND ORDER**
                                           07-CV-3497 (DRH) (AKT)

      v.

TOWN OF SOUTHAMPTON,
SOUTHAMPTON TOWN BOARD,
STEPHEN A. FRANO, THE HONORABLE
JUSTICES of the SOUTHAMPTON TOWN
JUSTICE COURT and DOES 1-5,

                     Defendants.
-------------------------------------------------------------X
**APPEARANCES:**

**For the Plaintiffs:**
**Patricia Weiss, Esq.**
Sag Harbor Shopping Cove
78 Main Street, Suite 14
P.O. Box 751
Sag Harbor, NY 11963-0019

**For the Defendants Town of Southampton,**
**Southampton Town Board, and Stephen A. Frano:**
**Nixon Peabody LLP**
50 Jericho Quadrangle, Suite 300
Jericho, NY 11753
By: Michael Stewart Cohen, Esq.
    Michelle Yuen, Esq.


**HURLEY, Senior District Judge**:

           Plaintiffs Donald MacPherson ("MacPherson"), 10 Bathing Beach Co., Inc. ("10

Bathing") and 16 Bathing Beach Co., Inc. ("16 Bathing") (collectively, "Plaintiffs") filed the

present action against the Town of Southampton (the "Town"), Southampton Town Board (the

"Board"), Stephen A. Frano ("Frano"), and the Justices of the Southampton Town Justice Court

2

(the "Justices") challenging the Town's promulgation and enforcement of its rental ordinances. The Town, Board and Frano (collectively, the "Town Defendants") move to dismiss the First Amended Complaint ("Amended Complaint"), pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), insofar as the pleading asserts claims against them.  For the reasons stated below, the Town Defendants' motion to dismiss is granted in part and denied in part.[1]

### BACKGROUND

The following summary of facts is taken from the Amended Complaint.  Plaintiffs each own residential property in the Town, where MacPherson is a part-time resident.  (First Am. Compl. ¶¶ 4-6.)  The two properties in question are 10 Bathing Beach Road and 16 Bathing Beach Road.  (Id. ¶¶ 20, 22.)

Frano, a Town Code Enforcement Officer, visually inspected and otherwise researched the properties in question in June 2007.  (Id. ¶¶ 20-23.)  Frano concluded that the properties were in violation of several Town ordinances due to:  (1) occupancy by renters without a permit, (2) lack of certificates of occupancy, and (3) improper gates on the properties' pool enclosures. (Id. ¶¶ 21, 23.)  On June 17, 2007, Frano swore to three complaints against MacPherson for the violations relating to the properties.  (Id.)  Thereafter, on August 1, 2007, Justice Barbara L. Wilson issued a criminal summons against MacPherson for each of the houses "directing that MacPHERSON appear in person before this Court for arraignment."  (First Am. Compl. ¶ 24.)  The summons further stated that an arrest warrant would issue if he failed to appear.  (Id.)  Plaintiffs allege, upon information and belief, that the criminal summonses were

---

[1] The Justices filed a motion to dismiss the First Amended Complaint which was granted by this Court's Memorandum and Order dated September 30, 2009.

3

mailed to MacPherson by the Justice Court's clerk, but never personally served upon him.  (*Id.* ¶ 25.)  MacPherson had not been provided notice of the alleged violations nor an opportunity to cure them prior to being served with the criminal summonses.  (*Id.* ¶ 26.)

Plaintiffs further allege, upon information and belief, that "JUSTICE WILSON may not have personally reviewed the complaints for legal sufficiency prior to issuance of a criminal summons because JUSTICE WILSON may have allowed a court clerk to use her 'name stamp' on the criminal summons, notwithstanding the strictures of the Fourth Amendment."  (*Id.* ¶ 24.)

Plaintiffs filed the instant action on August 22, 2007, asserting claims against the Town Defendants under 42 U.S.C. § 1983 premised upon the alleged unconstitutionality of the Town's rental laws, as well as for common law indemnification for Plaintiffs' legal expenses.  At that time, Plaintiffs alleged that MacPherson expected to be arraigned later that day for violations of § 330-71A of the Town Code, which provides that no dwelling shall be occupied as a seasonal rental unless the Town has issued a seasonal rental permit.[2]

On October 6, 2007, Plaintiffs filed the Amended Complaint.  This amended pleading alleges that MacPherson was arraigned on the six charges (three per property) on August 22, 2007.  (*Id.* ¶ 27.)  Plaintiffs allege that § 330-71A "is unconstitutional on its face and as applied and therefore none of the Plaintiffs should be administratively required to follow it, nor judicially punished for failure to do so."  (First Am. Compl. ¶ 28.)

---

[2] The Town's seasonal rental law, Southampton Town Code, Chapter 330, Article XIV ("Old Seasonal Rental Law"), upon which the charges against MacPherson are based, was repealed on or about the end of September 2007, and on August 28, 2007, the Town passed Local Law of 2007, creating a new Chapter 270 ("New Rental Properties Law") of the Southampton Town Code which became effective as of January 1, 2008.  (First Am. Compl. ¶2(a), (b); First Am. Compl, Ex. 2.)

4

The Amended Complaint asserts eight causes of action.  Count I alleges violations of Plaintiffs' Fourth and Fourteenth Amendment rights stemming from Plaintiffs' allegations that: (1) MacPherson "is being seized by virtue of [being] subject to 'being arrested[,'] as stated in the 'criminal summonses' " (*id.* ¶ 76); and (2) "[u]nder the TOWN's rental permit laws, Plaintiffs are being required to have their properties unreasonably 'searched' and inspected by government employees in order to rent them or else given an unconstitutional alternative" (*id.* ¶ 78).  Count I also contains an allegation the Town Defendants "engaged in the malicious abuse of criminal process" by:

> [I]nten[ding] to do harm to MacPHERSON, without excuse or justification[, and] conspir[ing] to use (and did use) all of such process in a perverted way to obtain a collateral objective – to endeavor to cause MacPHERSON to have to spend money to defend frivolous complaints by FRANO, so that FRANO could feel self-important and increase his own income, at the expense of causing a diminution in MacPHERSON's personal and professional reputation.

(*Id.* ¶¶ 79, 82.)

Count II seeks damages for the Town Defendants' alleged violation of Plaintiffs' First Amendment right "to rent their properties without having to publicly reveal and provide all of the information requested" on the Town's Old Seasonal Rental Law and New Rental Properties Law application (*id.* ¶ 85), and in retaliation against Plaintiffs "by having a policy that withholds permits from lessor-owners who do not complete permit applications with information to which the TOWN is not constitutionally entitled to have in the first place."  (*Id.* ¶ 86.)  Plaintiffs also claim that the Old Seasonal Rental Law and New Rental Properties Law "operate[] as a prior restraint of Plaintiffs' protected right of speech by remaining silent."  (*Id.*)

5

Count III seeks damages based upon the Town Defendants' alleged violation of Plaintiffs' Fifth and Fourteenth Amendment rights.  Specifically, Plaintiffs allege that the Town Defendants "violated Plaintiffs' rights to both procedural and substantive due process, in connection with renting their residences, the procedure for the issuance of rental permits and the right to a curative period in which to address and remedy any perceived violation of the State's or TOWN's pool enclosure laws."  (First. Am. Compl. ¶ 91.)  Additionally, Plaintiffs allege that they "have been treated differently from other persons who are similarly situated in numerous respects" and that "FRANO has targeted MacPHERSON in particular because MacPHERSON frequently rented out his residential properties to those individuals who FRANO has unlawfully discriminated against in violation of the Equal Protection Clause."  (*Id.* ¶ 92.)

Count IV alleges that the Town and Town Board violated Plaintiffs' Fourth, Fifth and Fourteenth Amendment rights by "fail[ing] to constitutionally fulfill their investigative and administrative duties to provide accuses such as Plaintiff MacPHERSON with fair trials by obtaining full and complete information from the TOWN's code enforcement officers."  (*Id.* ¶ 98.)  Plaintiffs claim that the Town's attorneys act as the Town's prosecutors, and are unable to independently evaluate evidence or analyze the law, and have gone unsupervised by the Suffolk County District Attorney.  (*Id.* ¶ 97.)  Additionally, MacPherson alleges that "he was deliberately deprived of notice and fair hearings."  (*Id.* ¶ 99.)

Count V alleges that the Town and Town Board violated Plaintiffs' Fourth, Fifth and Fourteenth Amendment rights by failing to: (1) "train and supervise their governmental employees not to violate civil rights of Plaintiffs and persons in Plaintiffs' situation" (*id.* ¶ 106); (2) "adequately train code enforcement officers [and others] how to gather evidence and pass it

6

along to the prosecutors to be analyzed at a time that is sufficiently prior to any arraignment and any criminal summons being issued" (First. Am. Compl. ¶ 107); (3) "supervise their employees to ensure that they were implementing the training that they were provided" (*id.* ¶ 108); (4) ensure that attorneys who were "appointed and deputized to act on the [Suffolk County District Attorney's] behalf and on behalf of The People of the State of New York" received adequate training from the Suffolk County District Attorney (*id.* ¶ 110); and (5) teach Town employees to "provide advance[d] notice and opportunities to take remedial action prior to charging property owners with violations of the New York State Uniform Fire Prevention and Building Code" and "to know that 'season rental permit' laws . . . and the new Rental Permit Law . . . cannot be written or enforced in [an unconstitutional] manner" (*id.* ¶ 113.  Plaintiffs also claim that "[t]he little training that has been provided is woefully inadequate."  (*Id.* ¶ 112.)

In Count VI, MacPherson seeks common law indemnification for his legal costs and expenses "incurred in connection with his legal defense of any Justice Court criminal prosecution under the theory of common law indemnification."  (*Id.* ¶ 126.)

In Count VII, Plaintiffs seek declarations that: (1) "the TOWN's promulgated 'seasonal rental law' is unconstitutional on its face and as written, and as being applied, . . . and because the entire law is inextricably intertwined, Chapter 330, Article XIV, must all be declared unconstitutional and unenforceable" (First. Am. Compl. ¶ 129); (2) "the TOWN's recently promulgated new 'Rental Law' is unconstitutional on its face and as written, . . . and because the entire law is inextricably intertwined, Chapter 270 (Rental Properties) must all be declared unconstitutional and unenforceable" (*id.* ¶ 130); (3) "the Town's 'copy cat' local ordinances which adopt the State's Fire Prevention and Building Codes without providing notice and an

7

opportunity to remedy are unconstitutional [facially] and as applied" (*id.* ¶ 131); (4) the Town's "current plan of prosecution of violations of its local laws by its own TOWN's attorneys violates the Due Process rights of criminal defendants because it is so fraught with conflicts as to be fundamentally unfair and unconstitutional" (*id.* ¶ 132); (5) "any prosecution of a criminal violation before the JUSTICES by any attorney who has not been pre-designated by the Attorney General of Suffolk County District Attorney [sic] Spota and filed an oath in the County Clerk's records is a violation of Due Process" (*id.* ¶ 133); (6) enforcement of the Town's Old Seasonal Rental Law was unconstitutional (*id.* ¶ 135); and (7) "it would be unconstitutional for the JUSTICES to enforce or adjudicate cases brought under the TOWN's new Rental Law because that law is unconstitutional" (First. Am. Compl. ¶ 136). [3]

        Similarly, Count VIII seeks injunctive relief: (1) "requiring that Defendants provide training to all of its code and law enforcement officers, including prosecutors, to teach them the constitutionally adequate procedures in connection with enforcement of the alleged pool fencing and pool gate enclosure violations" (*id.* ¶ 138); (2) preventing the enforcement of the Town's Old Seasonal Rental Law until its constitutionality has been determined by the Court (*id.* ¶ 139); (3) preventing enforcement of the Town's New Rental Properties Law, as well as adjudication of any cases brought pursuant to same, until its constitutionality has been determined by the Court (*id.* ¶ 140); (4) preventing "the TOWN's manner of issuing criminal

---

[3] Plaintiffs' causes of action seeking declaratory and injunctive relief based upon the Justices' practice of using of name stamps were dismissed on September 30, 2009.  Similarly, Plaintiffs' causes of action seeking declaratory and injunctive relief regarding the criminal adjudication of MacPherson's state case by Justice Wilson were dismissed on September 30, 2009.  However, since the Court did not address the appropriateness of declaratory and injunctive relief regarding the enforcement of the Town's rental laws (both the Old Seasonal Rental Law and New Rental Properties Law) as against those other than Plaintiffs, it will do so at this time.

summonses for alleged violations of the 'copy cat' local ordinances" until its constitutionality

has been adjudicated (*id.* ¶ 141); and (5) "requiring Defendants to submit to . . . monitoring by

the New York State Attorney General['s] Office" (*id.* ¶ 143).

For the reasons indicated below, the Town Defendants' motion is granted in part

and denied in part.

### *DISCUSSION*

**I.**    ***Motion to Dismiss: Legal Standards***

Rule 8(a) provides that a pleading shall contain "a short and plain statement of the

claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The Supreme Court

has recently clarified the pleading standard applicable in evaluating a motion to dismiss under

Rule 12(b)(6).

First, in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Court disavowed the

well-known statement in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) that "a complaint should

not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can

prove no set of facts in support of his claim which would entitle him to relief."  550 U.S. at 562.

Instead, to survive a motion to dismiss under *Twombly*, a plaintiff must allege "only enough facts

to state a claim to relief that is plausible on its face."  *Id*. at 570.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss
> does not need detailed factual allegations, a plaintiff's obligation to
> provide the grounds of his entitlement to relief requires more than
> labels and conclusions, and a formulaic recitation of the elements
> of a cause of action will not do.  Factual allegations must be
> enough to raise a right to relief above the speculative level, on the
> assumption that all the allegations in the complaint are true (even if
> doubtful in fact).

*Id.* at 555 (citations and internal quotation marks omitted).

More recently, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court provided further guidance, setting forth a two-pronged approach for courts deciding a motion to dismiss. First, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555)).

Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. The Court defined plausibility as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court must look to the allegations on the face of the complaint, but may also consider "[d]ocuments that are attached to the complaint or incorporated in it by reference." *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir. 2007). *See also Gillingham v. GEICO Direct*, 2008 WL 189671, at *2 (E.D.N.Y. Jan. 18, 2008) (noting that a court considering a motion to dismiss "must limit itself to the facts stated in the

complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint") (citation and internal quotation marks omitted).

## II.    *Plaintiffs Have Failed to Sufficiently Allege a Fourth Amendment Seizure or Malicious Prosecution Claim (Count I)*

Plaintiffs claim that MacPherson was seized because he was "subject to 'being arrested[,'] as stated in the 'criminal summonses.' "  (First Am. Compl. ¶ 76).  However, the Town Defendants assert that Plaintiffs' claim should be dismissed because "the mere service of a criminal summons on a defendant and his/her subsequent arraignment [does not] constitute a 'seizure' under the Fourth Amendment."  (Defs.' Mem. at 2.)  The Town Defendants also argue that the Amended Complaint lacks any allegation that, after his arraignment, MacPherson was ordered or otherwise required to remain within the state or that his travel was restricted.  (*Id.* at 3-4.)

The Second Circuit, in *Swartz v. Insogna*, 704 F.3d 105 (2d Cir. 2013), recently addressed the issues of pre and post-arraignment seizures.  The Court recited its previous holding in the case *Burg v. Gosselin*, 591 F.3d 95 (2d Cir. 2010), that "the issuance of a pre-arraignment, non-felony summons requiring a later court appearance, without further restrictions, does not constitute a Fourth Amendment seizure."  *Swartz*, 704 F.3d at 112 (quoting *Burg*, 591 F.3d at 98) (internal quotation marks omitted); *see also Orakwue v. City of New York*, 2013 WL 5407211, at *13 (E.D.N.Y. Sept. 25, 2013).  However, the Court in *Swartz* found a post-arraignment seizure under the facts of that case, in which the "plaintiff . . . was required to appear in court in connection with criminal proceedings."  *Swartz*, 704 F.3d at 112; *see also Kennedy v. City of New York*, 2013 WL 3490351, at *5 (E.D.N.Y. July 10, 2013) (applying *Swartz* precedent and

stating "that a post-arraignment obligation to answer criminal charges and several court appearances are a sufficient deprivation of liberty.")  Thus, "a post-arraignment defendant who is obligated to appear in court in connection with [criminal] charges whenever his attendance [i]s required suffers a Fourth Amendment deprivation of liberty."  *Swartz*, 704 F.3d at 112 (alterations in original) (citations and internal quotation marks omitted).  In sum, while the issuance of a pre-arraignment, non-felony summons that merely requires a later court appearance does not constitute a Fourth Amendment seizure, the requirement that a plaintiff appear in court, post-arraignment, in connection with criminal proceedings, does constitute a Fourth Amendment seizure.

Here, Plaintiffs' Fourth Amendment claim is dismissed because Plaintiffs have failed to allege either a pre or post-arraignment seizure.  Plaintiffs' claim that MacPherson was merely issued a criminal summons requiring his presence in court does not constitute a Fourth Amendment pre-arraignment seizure.  In addition, Plaintiffs' Amended Complaint is bereft of allegations that MacPherson was required to appear in court after his arraignment or that he did in fact appear in court after his arraignment as a result of the criminal charges.  Therefore, Plaintiffs have similarly failed to allege a post-arraignment Fourth Amendment seizure.

Moreover, to the extent that Plaintiffs are asserting a claim for malicious prosecution, that claim also fails because Plaintiffs have not properly alleged a post-arraignment seizure, as discussed *supra*.  *See id.* at 112 (stating that in order for a malicious prosecution claim "to be actionable under section 1983[,] there must be a post-arraignment seizure"); *Kennedy*, 2013 WL 3490351, at *5 ("The plaintiff must also be subject to some manner of continuing seizure upon his release from custody.").  Plaintiffs have additionally failed to plead a necessary

12

element of a malicious prosecution claim, i.e., that the criminal actions terminated in Plaintiffs'

favor.  *See Kennedy*, 2013 WL 3490351, at \*5 ("To prevail in an action for malicious

prosecution the plaintiff must show: (1) the initiation of an action by the defendant against him,

(2) with malice, (3) without probable cause, and (4) that the action terminated in his favor.")

(citation omitted); *see also Mangino v. Inc. Vill. of Patchogue*, 739 F. Supp. 2d 205, 229

(E.D.N.Y. 2010) (stating that "under both state and federal law, a plaintiff asserting a malicious

prosecution claim must demonstrate that the proceeding terminated in that plaintiff's favor").

Thus, dismissal is appropriate on Plaintiffs' Fourth Amendment seizure and malicious

prosecution claims.

**III.**     ***Plaintiffs Have Not Adequately Alleged a Malicious Abuse of Process Claim (Count I)***

The elements of a section 1983 cause of action for malicious abuse of process are

provided by state law.  *Cook v. Sheldon*, 41 F.3d 73, 80 (2d. Cir. 1994).  In New York, a claim

for malicious abuse of process requires allegations "that the defendant (1) employs regularly

issued legal process to compel performance or forbearance of some act (2) with intent to do harm

without justification, and (3) in order to obtain a collateral objective that is outside the legitimate

ends of the process."  *Sherwin Toppin Mktg. Consultants v. City of New York*, 2013 WL 685382,

at \*11 (E.D.N.Y. Feb. 25, 2013) (quoting *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir.

2003)) (internal quotation marks omitted); *see also Cook*, 41 F.3d at 80 (same).  The essence of

an abuse of process claim is "the improper use of process after it is regularly issued."  *Cook*, 41

F.3d at 80 (citation and quotation marks omitted); *see also Mangino*, 814 F. Supp. 2d at 247

("[T]he gist of the tort of abuse of process . . . is not commencing an action or causing process to

issue without justification, but misusing or misapplying process *justified in itself* for an end other

13

than that which it was designed to accomplish.") (citations and internal quotation marks omitted).

Plaintiffs allege that the Town Defendants engaged in malicious abuse of criminal process by "inten[ding] to do harm to MacPHERSON," by using process to "obtain a collateral objective – to endeavor to cause MacPHERSON to have to spend money to defend frivolous complaints by FRANO, so that FRANO could feel self-important and increase his own income, at the expense of causing a diminution in MacPHERSON's personal and professional reputation." (*Id.* ¶¶ 79, 82.)

Here, Plaintiffs have sufficiently alleged the first element, i.e., that the Town Defendants used legal process, by claiming that Frano swore to three complaints against MacPherson for violations relating to the properties, and that, thereafter, Justice Barbara L. Wilson issued a criminal summons "directing that MacPHERSON appear in person before this Court for arraignment" and warning that an arrest warrant would issue if he failed to appear. (First Am. Compl. ¶¶ 21, 23, 24.) *See Cook*, 41 F.3d at 80 (stating that "legal process means that a court issued the process, and the plaintiff will be penalized if he violates it") (citing *Mormon v. Baran*, 35 N.Y.S.2d 906, 909 (Sup. Ct. 1942)). In addition, Plaintiffs have alleged the second element of an abuse of process claim by claiming that the Town Defendants intended to harm MacPherson, without justification, by bringing frivolous charges against him. (*See* First Am. Compl. ¶¶ 79, 82.)

However, Plaintiffs' allegations as to the third element fall short. Plaintiffs allege that the Town Defendants "caused MacPHERSON to be 'overcharged' by exaggerating the charges stated in the criminal summons" and "endeavor[ed] to cause MacPHERSON to have to

14

spend money to defend frivolous complaints by FRANO, so that FRANO could feel self-important and increase his own income, at the expense of causing a diminution in MacPHERSON's personal and professional reputation."  (First Am. Compl. ¶¶ 79, 82.)

As a preliminary matter, Plaintiffs' Amended Complaint lacks any factual allegations that the Town Defendants abused process to obtain a collateral objective.  Instead, Plaintiffs' merely allege in a conclusory fashion that the Town Defendants acted vengefully or maliciously in bringing the charges.  *See, e.g.*, *Jones v. Maples/Trump*, 2002 WL 287752, at *8 (S.D.N.Y. Feb. 26, 2002) (allegations that defendants brought charges to, *inter alia*, damage plaintiff's credibility, harm his person, business, and reputation, and "extort a non-disclosure agreement . . . allege[d] only that defendants acted vengefully or maliciously in bringing the charges . . .  not . . . that the charges were improperly used after they were brought") (internal quotation marks omitted), *aff'd,* 71 F. App'x. 873 (2d Cir. 2003).

New York courts have identified certain types of collateral objectives that satisfy the third element, including "infliction of economic harm, extortion, blackmail and retribution." *Brandon v. City of New York*, 705 F. Supp. 2d 261, 275 (S.D.N.Y. 2010); *see also Chamberlain v. Lishansky*, 970 F. Supp. 118, 121 (N.D.N.Y. 1997).  Although Plaintiffs claim that the Town Defendants attacked MacPherson's personal and professional reputation, Plaintiffs fail to assert any factual allegations to indicate that the Town Defendants abused process for the purpose of harming MacPherson's reputation.  *See Nat'l Football League Players Ass'n v. Office and Prof'l Emps. Int'l Union, Local 2*, 947 F. Supp. 540, 543 (D.D.C. 1996) ("Plaintiff provides no evidence to suggest that defendants took affirmative actions to disseminate the story of their litigation with [plaintiff].  Without such evidence, plaintiff's allegation of an intentional attack

15

on [plaintiff's] business reputation amounts to no more than an allegation of ulterior motive."),

*aff'd,* 1997 WL 362761 (D.C. Cir. May 6, 1997)).

   Similarly, while Plaintiffs allege that the Town Defendants abused process for the

collateral purpose of causing MacPherson to spend money to defend frivolous complaints, this

allegation does not claim the type of economic injury that constitutes an abuse of process.  *See*

*id.* at 544 (finding an allegation that the defendant brought "unwarranted actions for the purpose

of inflicting serious economic injury" insufficient to amount to abuse of process); *cf. Bd. of*

*Educ. v. Farmingdale Classroom Teachers Assoc., Inc., Local 1889, AFT AFL-CIO*, 38 N.Y.2d

397, 404 (1975) (finding that issuance of 87 subpoenas, "motivated by an intent to harass and to

injure, and the refusal to comply with a reasonable request to stagger the appearances was

sufficient to support an inference that the process was being perverted to inflict economic

harm").

   Plaintiffs additionally allege that the Town Defendants abused process so that

"FRANO could feel self-important and increase his own income."  Again, Plaintiffs' Amended

Complaint noticeably lacks any allegations that process was "improperly perverted 'after' its

issuance."  *Silver v. Kuehbeck*, 2005 WL 2990642, at *6 (S.D.N.Y. Nov. 7, 2005), *aff'd,* 217 F.

App'x. 18 (2d Cir. 2007).  Indeed, Plaintiffs allege motives of self-importance and pecuniary

interests by Frano in bringing the charges, but fail to allege any facts that Frano abused process

after the criminal summons was issued to achieve those collateral objectives.  *See id.*, at *7

(dismissing the plaintiff's abuse of process claim because the pleadings did not "identif[y] how

Defendants used court process after its issuance to cause grievous harm to [the plaintiff]").

16

Finally, Plaintiffs, citing to their allegations in paragraphs 68, 69 and 82 of the

Amended Complaint, argue that Frano did not comply with Executive Law § 382(1) and (2)

because he failed to give MacPherson notice of the violations and an order to remedy, and,

therefore, "the criminal summons should not have been issued and when it was it was used in a

'perverted way.' " (Pls.' Mem. in Opp'n. at 9.)  However, because Frano's alleged conduct

occurred prior to the issuance of process, it does not support Plaintiffs' claim of abuse of process

itself.  *See Cook*, 41 F.3d at 80 ("While malicious prosecution concerns the improper issuance of

process, the gist of abuse of process is the improper use of process after it is regularly issued.")

(citation and internal quotation marks omitted).  Since Plaintiffs' Amended Complaint lacks

sufficient allegations that the Town Defendants abused process to obtain a collateral objective

that was outside the legitimate ends of the process, their claim is dismissed.

**IV.**     ***Plaintiffs' Fourth Amendment Search Claims are Dismissed (Count I)***

Plaintiffs claim that "[u]nder the TOWN's rental permit laws, [they] are . . .

required to have their properties unreasonably 'searched' and inspected by government

employees in order to rent them or else [they are] given an unconstitutional alternative" in

violation of their Fourth Amendment rights.[4]  (First Am. Compl. ¶ 78.)

The Town Defendants assert three main arguments in support of dismissal of

Plaintiffs' claim, namely: (1) the Old Seasonal Rental Law, under which MacPherson is being

prosecuted, did not authorize warrantless searches or require certifications from licensed

---

[4] The Court notes parenthetically that Plaintiffs provide numerous arguments in their Memorandum in Opposition to support their Fourth Amendment claims that do not provide citations to the Amended Complaint or to relevant authority, controlling, persuasive or otherwise to explain their possible relevance.  Accordingly, those arguments provide no bases for Plaintiffs' Fourth Amendment claims to withstand dismissal.

professions, but, rather, permitted inspection of rental properties "only upon the consent of the owner, tenant or lessee, or upon obtaining a search warrant" (Defs.' Mem. at 4; First Am. Compl., Ex. 1); (2) the New Rental Properties Law Sections 270-10 and 270-5(B)(11) do not require warrantless inspections because Section 270-10 specifically states that inspections are upon consent of the owner, managing agent, or tenant of the property, and 270-5(B)(11) states that an owner has the option of obtaining a professional certification in lieu of having an inspection (Defs.' Mem. at 31); and (3) Plaintiffs do not allege "that any of the properties owned by any of the plaintiffs have ever been searched or inspected illegally or unreasonably by any of the defendants- pursuant to the [rental property laws] or otherwise" (Defs.' Mem. at 4). [5]

Since Plaintiffs' claim appears to encompass both the Old Seasonal Rental Law and New Rental Properties Law, the Court will address each in kind.

**A.**    ***Plaintiffs' Fourth Amendment Search Claims Relating to the Old Seasonal Rental Law are Dismissed***

Plaintiffs challenge the constitutionality of the Old Seasonal Rental Law, claiming that it violates their Fourth Amendment rights by requiring a warrantless search, and seek a declaration that it is facially unconstitutional. While the Court will address Plaintiffs' apparent facial challenge to the constitutionality of the Old Seasonal Rental Law, it will also address a possible as-applied challenge.

---

[5] The Town Defendants additionally assert in their Reply that Plaintiffs' Fourth Amendment challenge to the New Rental Properties Law must fail because (1) a law requiring consent to a warrantless search is only unconstitutional where a landlord would be deprived of an economic benefit from his property if he refused to permit the search (Defs.' Reply at 6), (2) landlords do not have a reasonable expectation of privacy in rented premises (*id.* at 7), and (3) Plaintiffs' allegations that the professional certifications would be "unlikely" or "infeasible" are not ripe for review (*id.* at 8). However, since the Court finds that Plaintiffs' Fourth Amendment challenge to the New Rental Properties Law is unavailing, as discussed *infra*, the Court need not address these additional arguments.

18

As discussed above, the Town Defendants argue that the Old Seasonal Rental Law did not authorize warrantless searches or require certifications from licensed professionals, but, rather, permitted inspection of rental properties "only upon the consent of the owner, tenant or lessee, or upon obtaining a search warrant" (Defs.' Mem. at 4; First Am. Compl., Ex. 1).  The Court agrees.  Section 330-75 of the Old Seasonal Rental Law, entitled "Enforcement," provides, in pertinent part:

> B.  An enforcement officer is authorized to make or cause to be made inspections to determine the compliance of dwelling units with this article and to safeguard the health, safety, morals and welfare of the public.  The enforcement officer is authorized to enter, upon the consent of the owner, tenant or lessee, any premises for the purpose of performing his duties under this article.
>
> C.  An enforcement officer is authorized to make application for the issuance of a search warrant in order to conduct an inspection of any premises covered by this chapter where the owner, tenant or lessee refuses or fails to allow an inspection of its premises and where there is reasonable cause to believe that a violation of this article has occurred.   The application for a search warrant shall in all respects comply with the applicable laws of the State of New York.
>
> D.  Nothing in this chapter shall be deemed to authorize an enforcement officer to conduct an inspection of any premises subject to this chapter without the consent of the owner, tenant or lessee of the premises or without a warrant duly issued by an appropriate court.

(First Am. Compl., Ex. 1.)

The Old Seasonal Rental Law expressly required consent of the property owner, tenant or lessee or, in the alternative, a valid search warrant, before a search could be performed.  As such, the Court cannot declare the Old Seasonal Rental Law unconstitutional on its face.  *See Hafez v. City of Schenectady*, 894 F. Supp. 2d 207, 220 (N.D.N.Y. 2012) (finding a city code that

19

required either consent or a search warrant in order for officials to inspect property to be constitutional), *aff'd,* 524 F. App'x. 742 (2d Cir. 2013); *McLean v. City of Kingston*, 57 A.D.3d 1269, 1271 (3d Dep't. 2008) (same); *Paschow v. Town of Babylon*, 53 N.Y.2d 687, 688 (1981) (finding an ordinance which "require[d] consent or a warrant for an administrative search except in emergency situations" to be constitutional on its face); *see also Palmieri v. Town of Babylon*, 277 F. App'x. 72, 75 (2d Cir. 2008) (recognizing facial constitutionality of rental property ordinance challenged in *Paschow*).

Furthermore, to the extent Plaintiffs challenge the Old Seasonal Rental Law as it applies to them, the Court finds that Plaintiffs have not adequately alleged that they were subjected to an illegal search pursuant to that law.  While the Court notes that MacPherson was charged pursuant to the Old Seasonal Rental Law, and that Plaintiffs allege generally that Frano went to the properties and "personally observed conditions that led him to swear that there were various violations of the Town's laws," (First Am. Compl. ¶ 20-23), Plaintiffs have not alleged that Frano's observations of their properties constituted a search which violated their Fourth Amendment rights, or that any type of search was conducted by the Town Defendants pursuant to the Old Seasonal Rental Law.  Instead, Plaintiffs focus on the Old Seasonal Rental Law's search provisions as the basis for their challenge to that statute.  Nonetheless, the Court finds that Plaintiffs' minimal allegations describing Frano's visual observations of the properties do not allege a Fourth Amendment search violation.  *See generally Katz v. United States*, 389 U.S. 347, 351 (1967) (no Fourth Amendment protection for what is "knowingly expose[d] to the public"); *United States v. Reyes*, 283 F.3d 446, 465 (2d Cir. 2002) (finding no Fourth Amendment violation for observations that occurred along the "route which any visitor to a residence would

use") (citation omitted).  Thus, because Plaintiffs have not alleged that their properties were

unconstitutionally searched pursuant to the Old Seasonal Rental Law, any Fourth Amendment

challenge to the Old Seasonal Rental Law as applied to them is dismissed.

> **B.**     ***Plaintiffs' Fourth Amendment Search Claims Relating to the New Rental***
> ***Properties Law are Dismissed***

Plaintiffs' claims pertaining to the New Rental Properties Law must be dismissed

for the same reasons their claims as to the Old Seasonal Rental Law require dismissal.  To wit,

"on its face, the [New Rental Property Law] does not unconstitutionally penalize a property

owner for refusing to consent [to a search]."  *McLean*, 57 A.D.3d at 1271.  Instead, New Rental

Properties Law Section 270-5(B)(11) provides, in relevant part:

> B. The application [for a rental permit] shall contain the following:
>
> * * *
>
> (11) Written certification from a licensed architect or licensed engineer
> that states that the rental property fully complies with all of the provisions
> of the Code of the Town of Southampton. . . In lieu of the provision of a
> certification, an inspection may be conducted by the Chief Building
> Inspector.

(First Am. Compl., Ex. 2.)   Since the New Rental Properties Law does "not expressly require . .

. an inspection before the issuance or renewal of a permit," it is not facially unconstitutional.

*ATM One, LLC v. Inc. Vill. of Hempstead*, 91 A.D.3d 585, 587 (2d Dep't 2013).  Indeed, a

property owner who is applying for a rental permit has the option of obtaining a certification

from a licensed architect or engineer in lieu of submitting to an inspection.  *See Marcavage v.*

*Borough of Lansdowne, Pa.*, 493 F. App'x. 301, 306 (3d Cir. 2012) (upholding constitutionality

of ordinance which provides a property owner seeking a rental permit with the option of having a

property inspection performed by city officials *or* a licensed architect or engineer of the property

21

owner's own choosing); *cf. Sokolov v. Vill. of Freeport*, 52 N.Y.2d 341, 345-56 (1981) (finding unconstitutional a village ordinance that *required* a warrantless inspection of residential rental property in order to obtain a permit).  Thus, the New Rental Properties Law is not facially unconstitutional.

Moreover, Plaintiffs have not asserted an as-applied challenge to the New Rental Properties Law because the Amended Complaint lacks any allegations that their properties were searched pursuant to that law.[6]  Therefore, Plaintiffs' Fourth Amendment search challenge to the New Rental Properties Law is dismissed.

## V.    *Plaintiffs' First Amendment Claims are Dismissed (Count II)*

Plaintiffs claim that they have a "First Amendment right to rent their properties without having to publicly reveal and provide all of the information requested on the TOWN's 'seasonal rental permit application' and/or new Rental Law permit application."  (First Am. Compl. ¶ 85).  Plaintiffs' further claim that the Town Defendants retaliated against Plaintiffs in violation of their First Amendment rights "by having a policy that withholds permits from lessor-owners who do not complete permit applications with information to which the TOWN is not constitutionally entitled to have in the first place."  (*Id.* ¶ 86.)  Additionally, Plaintiffs claim that the Old Seasonal Rental Law and New Rental Properties Law "operate[] as a prior restraint of Plaintiffs' protected right of speech by remaining silent."  (*Id.*)

---

[6] The Court notes that the New Rental Properties Law was not in effect at the time of Frano's "observations" of Plaintiffs' properties in June 2007, and, thus, Frano's alleged conduct could not have constituted a search by Frano pursuant to the New Rental Properties Law.  Nonetheless, as discussed, *supra*, the Court does not find that Plaintiffs have alleged *any* search of their properties pursuant to either the old or new rental law.

22

**A.**     *First Amendment Protection and Retaliation*

"In general, a section 1983 claim will lie where the government takes negative action against an individual because of his exercise of rights guaranteed by the Constitution or federal laws." *Friedl v. City of New York,* 210 F.3d 79, 85 (2d Cir. 2000).  In particular, "[t]he Second Circuit has recognized that a claim for relief may be stated under section 1983 if otherwise routine administrative decisions are made in retaliation for the exercise of constitutionally protected rights." *Chernoff v. City of New York,* 2009 WL 816474, at *5 (E.D.N.Y. Mar. 26, 2009) (quoting *Gill v. Mooney,* 824 F.2d 192, 194 (2d Cir.1987)) (internal quotation marks omitted).  To establish a *prima facie* case of retaliation under Section 1983, plaintiffs must show that (1) they engaged in speech protected by the First Amendment; (2) "persons acting under color of state law took adverse action against them in retaliation for that speech"; and (3) "the retaliation resulted in 'actual chilling' of their exercise of their constitutional right to free speech." *Zherka v. Amicone*, 634 F.3d 642, 643 (2d Cir. 2011).

Plaintiffs correctly argue that "the right to Free Speech also includes the right not to be compelled to speak."  (Pls.' Mem. in Opp'n. at 10.)  *See Wooley v. Maynard*, 430 U.S. 705, 714 (1977) ("[T]he right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all.").  However, the analysis does not end here.  When addressing a claimed First Amendment violation of the right not to speak, a court must determine whether First Amendment protections are implicated.  *Id.* at 715; *see also Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 884 (1992) (plurality opinion).  If so, the court must further analyze whether the State's interests

23

are sufficiently compelling to justify the infringement, and its legislation narrowly tailored to achieve the goals.  *Wooley*, 430 U.S. at 716-17; *see also Whalen v. Roe*, 429 U.S. 589, 602 (1977) ("Requiring [disclosures of private medical information] to representatives of the State having responsibility for the health of the community, does not automatically amount to an impermissible invasion of privacy.").

        While the Plaintiffs may have alleged conduct protected by the First Amendment for purposes of the first element of a claim for retaliation under Section 1983, the Court need not address Plaintiffs' allegations as to that element because Plaintiffs have failed to sufficiently allege the second element, i.e., that adverse action was taken against them in retaliation for their assertion of their First Amendment rights.  Although Plaintiffs claim that the Town Defendants retaliate against property owners by withholding permits from those owners "who do not complete permit applications with information to which the TOWN is not constitutionally entitled to have in the first place," Plaintiffs have not alleged that they in fact applied for permits in the first instance.  Nor have Plaintiffs adequately alleged any facts to suggest that the Town Defendants retaliated against Plaintiffs for exercising their First Amendment right not to provide information.  *See Hafez*, 894 F. Supp. 2d at 223 (finding a lack of connection between the protected activity and the alleged retaliatory conduct where there was no indication that the defendants had any knowledge of the plaintiff's engagement in the protected activity).  If Plaintiffs had, for example, alleged that they applied for permits, omitting information on the applications that they believed they were not constitutionally compelled to provide, and the Town Defendants subsequently denied their applications because of their refusal to provide said

24

information, then the Plaintiffs may have conceivably alleged the second element of their claim. However, that is not the case here.

Moreover, the Amended Complaint does not contain any allegation that the Plaintiffs refused to apply for permits in an exercise of their First Amendment rights.  While Plaintiffs claim that they have a right not to provide protected information on their applications, they do not specifically allege that they refused to apply for permits for that reason.

Similarly, Plaintiffs have not alleged the third element, namely, that Plaintiffs desired to exercise their First Amendment rights but were chilled by the Town Defendants' actions.  *See Williams v. Town of Greenburgh*, 535 F.3d 71, 78 (2d Cir. 2008); *see also Kuck v. Danaher*, 600 F.3d 159, 168 (2d Cir. 2010) (finding plaintiff's First Amendment retaliation claim was properly dismissed when "nothing in the complaint suggests that [plaintiff's] speech was 'actually chilled' as a result of" defendants' alleged conduct); *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001) ("Where a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech."); *Ford v. Reynolds*, 326 F. Supp. 2d 392, 403 (E.D.N.Y. 2004) ("Because Plaintiffs have failed to allege any actual chill or deterrence, this Court must conclude that [plaintiffs] did not suffer the harm necessary to support their retaliation claim."), *aff'd,* 167 F. App'x. 248 (2d Cir. 2006); *Rosendale v. Brusie,* 2009 WL 778418, at *11 (S.D.N.Y. Mar. 25, 2009) ("Because the Complaint shows that Plaintiff continued to exercise his First Amendment rights despite Defendants' alleged retaliatory conduct, Plaintiff fails to allege actual chilling of his speech."); *Balaber-Strauss v. Town/Vill. of Harrison*, 405 F. Supp. 2d 427, 433-34 (S.D.N.Y. 2005) (dismissing First Amendment retaliation claim when Complaint failed to allege that plaintiff refrained from speaking at the public Town

meeting after defendants engaged in "smear campaign").  Accordingly, Plaintiffs' First Amendment retaliation claim is dismissed.

### B.   *Prior Restraint on Speech*

"A prior restraint is a law giving public officials the power to deny the use of a forum in advance of actual expression." *Jersey's All-Am. Sports Bar, Inc. v. Wash. State Liquor Control Bd.*, 55 F. Supp. 2d 1131, 1136 (W.D. Wash. 1999) (citing *Southeastern Promotions Ltd. v. Conrad*, 420 U.S. 546, 553 (1975)).  In this case, Plaintiffs were not seeking permission to use a forum to exercise their First Amendment rights; rather, Plaintiffs were seeking to rent their properties.  The right to rent property is not protected by the First Amendment.  Nor were Plaintiffs seeking permission from the Town to exercise their First Amendment right not to speak.  The Court is not aware of, nor have the Plaintiffs provided, any case law to support the proposition that there can be a prior restraint on one's right not to speak.  Thus, Plaintiffs' First Amendment prior restraint claim is dismissed.

## VI.   *Plaintiffs' Equal Protection Claims are Dismissed (Count III)*

### A.   *Plaintiffs' Selective Enforcement Claim*

To state a claim for equal protection based upon selective enforcement of the law, plaintiffs must plead that: "(1) they were treated differently from other similarly situated individuals and (2) this differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Butler v. City of Batavia*, 323 F. App'x. 21, 22 (2d Cir. 2009) (quoting *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 790 (2d Cir. 2007)) (internal

26

quotation marks omitted); *Mattison v. Black Point Beach Club Ass'n*, 376 F. App'x. 92, 93 (2d Cir. 2010) (summary order).

In the alternative, "failing proof of selective treatment based on impermissible considerations," plaintiffs must plead a "class of one" equal protection claim. *See Everitt v. DeMarco*, 704 F. Supp. 2d 122, 135 (D. Conn. 2010). "The Supreme Court has recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Ruston v. Town Bd. for the Town of Skaneateles*, 610 F.3d 55, 58 (2d Cir. 2010) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)) (internal quotation marks omitted).

"[C]lass-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Id.* at 59 (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006)) (internal quotation marks omitted). "Accordingly, to succeed on a class-of-one claim, a plaintiff must establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Id.* at 59-60 (quoting *Clubside, Inc.*, 468 F.3d at 159) (internal quotation marks omitted). Notably, "[c]ourts, including the Second Circuit, have repeatedly cautioned about the danger of ordinary disputes between a citizen and a municipality-- whether it be about land use, licenses, inspections, or some other regulatory or investigative function of local governments-- being transformed into federal

27

lawsuits by an incorrect, overexpansive theory of class-of-one liability." *Crippen v. Town of Hempstead*, 2013 WL 1283402, at *7 (E.D.N.Y. Mar. 29, 2013).

Here, Plaintiffs have failed to allege that they were treated differently from similarly situated individuals or entities.  The Town Defendants argue, and the Court agrees, that "the [Amended] Complaint is bereft of factual allegations suggesting that MacPherson is being treated differently from any other similarly situated owner of rental property in the Town" and Plaintiffs do not suggest "that MacPherson is being prosecuted for not obtaining the . . . required rental permit whereas other non-compliant landlords are not being prosecuted."  (Defs.' Mem. at 9.)  Therefore, Plaintiffs' equal protection claim – whether pled as a selective enforcement claim or a class-of-one claim – is deficient as matter of law.  *See Ruston*, 610 F.3d at 60 (dismissing equal protection claim when plaintiffs failed to allege "that properties sufficiently similar to theirs were treated more favorably" by defendants); *Amid v. Vill. of Old Brookville*, 2013 WL 527772, at * 6 (E.D.N.Y. Feb. 7, 2013) (dismissing plaintiff's class of one equal protection claim where plaintiff failed to plead sufficient facts and specific examples to demonstrate the alleged disparate treatment); *Cassidy v. Scoppetta*, 365 F. Supp. 2d 283, 290-91 (E.D.N.Y. 2005) (finding plaintiffs "failed to allege the most fundamental aspect of an equal protection claim" when they did not compare themselves to similarly situated individuals); *Izzo v. City of Syracuse*, 2000 WL 1222014, at *5 (N.D.N.Y. Aug. 3, 2000) (holding that the plaintiff failed to plead a selective enforcement claim when the "pleadings [did] not contain *any* references to other landlords, similarly situated, who were not, in fact, fined by the City"), *aff'd,* 11 F. App'x. 31 (2d Cir. 2001).

28

**B.**   *Plaintiffs' Equal Protection Challenges to the Rental Laws*

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  Although the general equal protection claim involves individuals in a suspect class, "the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials."  *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001).

"The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *Cleburne,* 473 U.S. at 440; *see also FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993) ("In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.").  Notably, "a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data."  *Id.* at 315; *see also Nordlinger v. Hahn*, 505 U.S. 1, 15 (1992) (equal protection "does not demand for purposes of rational-basis review that a legislature or governing decisionmaker actually articulate at any time the purpose or rationale supporting its classification").  Thus, "[w]hen social or economic legislation is at issue, the Equal Protection Clause allows the States

29

wide latitude, and the Constitution presumes that even improvident decisions will eventually be rectified by the democratic processes." *Cleburne,* 473 U.S. at 440 (internal citations omitted).

In this case, Plaintiffs have not alleged that the New Rental Properties Law disadvantages a suspect or quasi-suspect class or impinges upon a fundamental constitutional right. Thus, the Court will analyze the constitutionality of the New Rental Properties Law under a rational basis standard of review.[7]

The stated legislative intent of the New Rental Properties Law is to, *inter alia,* protect the "health, safety and welfare of the occupants and the neighbors" of rental dwellings. (First Am. Compl., Ex. 2 at 2; Defs.' Mem. at 9 (quotation marks omitted)). Courts have found that towns have a legitimate interest in "the safety of its residents who live in rental properties." *Palmieri v. Town of Babylon*, 2006 WL 1155162, at *7 (E.D.N.Y. Jan. 6, 2006), *aff'd*, 277 F. App'x. 72 (2d Cir. 2008). Moreover, "[t]he enactment of the [rental permit laws are] rationally related to [their] purpose of furthering safety." *Id.* Since the rental permit laws are rationally related to legitimate government interests, the Plaintiffs' equal protection facial challenge to the New Rental Properties Law is dismissed.

**VII.    *Plaintiffs' Claims Based Upon Violations of the Fifth Amendment are Dismissed***

To the extent that Plaintiffs assert causes of action under the Fifth Amendment in Counts III, IV and V of the Amended Complaint, those claims must be dismissed because Plaintiffs "have not named the United States government or any agency or employee thereof as a

---

[7] To the extent Plaintiffs challenge the Town's Old Seasonal Rental Law as violating the Equal Protection Clause on its face, Plaintiffs' claim is dismissed as moot because, as discussed *infra*, the Old Seasonal Rental Law was repealed in its entirety in September of 2007, and was replaced with the New Rental Properties Law which is subject to the same challenges in this lawsuit.

defendant in this matter." *Cassidy v. Scoppetta*, 365 F. Supp. 2d 283, 286 (E.D.N.Y. 2005); *see also Balaber-Strauss v. Town/Vill. of Harrison*, 405 F. Supp. 2d 427, 434-35 (S.D.N.Y. 2005) (same). "The Fifth Amendment governs the conduct of the *federal* government and *federal* employees, and does not regulate the activities of state officials or state actors." *Cassidy*, 365 F. Supp. 2d at 286 (quoting *Dawkins v. City of Utica*, 1997 WL 176328, at *4 (N.D.N.Y. Apr. 4, 1997)) (internal quotation marks omitted); *see also Guadagni v. New York City Transit Auth.*, 2009 WL 1910953, at *7 (E.D.N.Y. June 30, 2009) ("The right to due process guaranteed by the Fifth Amendment, however, applies only with regard to the federal government . . . .").

**VIII.   *Plaintiffs' Due Process Claims are Dismissed (Count III)***

Plaintiffs allege that the Town Defendants violated their procedural and substantive due process rights in violation of the Fourteenth Amendment.  The first step in analyzing Plaintiffs' due process claims is to determine whether the Town Defendants possessed a federally protectable right, i.e., a liberty or property interest.  *See Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989); *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999); *Walz v. Town of Smithtown*, 46 F.3d 162, 167-68 (2d Cir. 1995).  It is only when such a right is established that the Court may turn to a discussion of whether there has been a deprivation of that right without due process.  *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 571-72 (1972).  "In almost all cases, the existence of a federally protectable . . . right is an issue of law for the court."  *Natale*, 170 F.3d at 263.  As discussed below, Plaintiffs have not adequately alleged the existence of any cognizable liberty or property interest, and, therefore,

their due process claims are dismissed.[8]

### A.  *Plaintiffs' Claimed Property Interests*

Plaintiffs allege that the Town Defendants deprived them of their property interests, viz. their interests in their rental permits and in renting out their properties, without due process of law in violation of the Fourteenth Amendment.  (First Am. Comp. ¶ 91.)  Plaintiffs specifically assert that they have a " 'property right' to rent their single family residence[s] under New York law[,] . . . [and that] [t]he restrictions in the TOWN's law are so comprehensive and overly broad and burdensome that such rights are virtually eliminated."  (Pls.' Mem. in Opp'n. at 13.)[9]  In addition, Plaintiffs claim that "the renting out of single family residences year-round without the necessity of the [sic] following the tough restrictions in the [New Rental Properties Law] is a use that should be deemed as having been 'grandfathered' for many properties, including those belonging to MacPHERSON."  (*Id.* at 13-14.)

Protected property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Roth*, 408 U.S. at 577.  "[A]n abstract need or desire for benefits is not enough to establish a property interest."  *Hotel Syracuse, Inc. v. Young*, 805 F. Supp. 1073, 1083 (N.D.N.Y.

---

[8] Because the Court finds that Plaintiffs have not alleged a cognizable liberty or property interest, it need not address the issue of whether there was a deprivation of a right without due process.  Thus, Plaintiffs' claims and arguments as to, *inter alia*, the designation of an agent for service of process (Pls.' Mem. in Opp'n. at 14), the administrative and criminal processes at issue (First Am. Compl. ¶ 91), the right to a curative period to remedy a violation of the pool enclosure laws (*id.*), and their claimed deprivation of notice and a fair hearing (*id.* at ¶ 99), each of which involve the procedure due once a protectable interest is identified, need not be addressed.

[9] Although Plaintiffs assert in their opposition papers that they have a property right to rent their residences under "rule 8," Plaintiffs do not provide any further clarification regarding the elusive "rule 8," or any legal support for their bald, conclusory statement.  Accordingly, the Court cannot find that such a property right exists.

1992).  There must be "a legitimate claim of entitlement to it."  *Roth*, 408 U.S. at 577.  "In the Second Circuit, a plaintiff will be found to have a legitimate claim of entitlement to a particular benefit if, absent the alleged denial of due process, there is a certainty or a very strong likelihood that the benefit would have been granted."  *Okolie v. Paikoff*, 589 F. Supp. 2d 204, 215-16 (E.D.N.Y. 2008) (quoting *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 192 (2d Cir. 1994); *Yale Auto Parts, Inc. v. Johnson*, 758 F.2d 54, 59 (2d Cir. 1985)) (internal quotation marks omitted).

   Here, Plaintiffs could have potentially argued that they possessed a property right to rent their properties had they applied for rental permits, but because Plaintiffs failed to apply for rental permits it cannot now be said that "there is a certainty" that the benefit would have been granted.  Stated another way, absent the alleged denial of due process by the Town Defendants, Plaintiffs still would not have received rental permits to rent their properties because they never applied for rental permits in the first instance.  *See Kapps v. Wing*, 404 F.3d 105, 113 (2d Cir. 2005) ("A mere 'unilateral expectation' of receiving a benefit is not . . . enough") (citation omitted).  Thus, Plaintiffs have not alleged a legitimate claim of entitlement to rent their properties.

   In any event, assuming *arguendo*, that Plaintiffs have a cognizable property right to rent their residences, Plaintiffs nevertheless do not have standing to bring their due process claims because they do not claim that they applied for rental permits to rent their properties and that they were denied said permits pursuant to the rental laws' provisions.  Thus, to the extent that Plaintiffs claim that the enforcement of the rental laws violated their due process rights, Plaintiffs' claims must be dismissed.  *See Palmieri*, 2006 WL 1155162, at *6 ("[Plaintiff's]

33

failure to comply with the law by obtaining a permit undermines any claim he has that the Rental Permit Law as enforced violated due process with regard to his Property.").

Furthermore, Plaintiffs' argument that their due process rights were violated because "the renting out of single family residences year-round without the necessity of . . . following the tough restriction in the [New Rental Properties Law] is a use that should be deemed as having been 'grandfathered' for many properties, including those belonging to MacPHERSON" (Pls.' Mem. in Opp'n. at 13-14), can be characterized as a challenge to the enactment of the New Rental Properties Law rather than to the requirements/enforcement of the New Rental Properties Law.  *See Palmieri*, 2006 WL 1155162, at *6.  In essence, Plaintiffs are arguing that they had prior non-conforming uses of their properties which created a property right that could not be eradicated by the Town's subsequently enacted rental laws.  *See, e.g.*, *People v. Miller*, 304 N.Y. 105, 107 (1952) (stating that "nonconforming uses or structures, in existence when a zoning ordinance is enacted, are, as a general rule, constitutionally protected and will be permitted to continue, notwithstanding the contrary provisions of the ordinance") (citations omitted).

However, while Plaintiffs have raised this argument in their opposition papers, the Amended Complaint itself does not contain allegations of existing non-conforming uses. Notably, the Amended Complaint is devoid of allegations as to when Plaintiffs initially purchased their properties and began renting them so as to establish prior nonconforming uses. Further, Plaintiffs have failed to allege that their prior uses of the properties were legal, in order to establish a vested right.  *See Fifth Ave. Tenth Corp. v. Allen*, 55 Misc. 2d 80, 83 (Civ. Ct. N.Y. Cnty. 1967) ("It is immaterial that the landlord applied for a new certificate of occupancy in

1956. As noted, the tenancy was illegal at its inception. No vested right was created.").

Accordingly, Plaintiffs have not adequately alleged existing non-conforming uses that created a

vested property right for purposes of their due process claims.

### B.    *Plaintiffs' Claimed Liberty Interests*

Plaintiffs allege that MacPherson's "liberty interests were transgressed . . .

because he was deliberately deprived of notice and fair hearings."  (First Am. Compl. ¶ 99.)

This bold and conclusory claim, however, fails to identify which liberty interests were allegedly

transgressed.  Thus, Plaintiffs have not adequately pled the existence of any cognizable liberty

interest.

### IX.    *Plaintiffs' Claim Based Upon Failure to Fulfill Investigate and Administrative Functions is Dismissed (Count IV)*

Plaintiffs allege that the Town and Town Board violated Plaintiffs' Fourth, Fifth

and Fourteenth Amendment rights by: "fail[ing] to constitutionally fulfill their investigative and

administrative duties to provide accuseds such as Plaintiff MacPHERSON with fair trials by

obtaining full and complete information from the TOWN's code enforcement officers" (First

Am. Compl. ¶ 98); having the Town's attorneys act as the Town's prosecutors, who are unable to

independently evaluate evidence or analyze the law, who "are being paid by the TOWN  to seek

fines that go directly into the TOWN's coffers," and who have gone unsupervised by the Suffolk

County District Attorney (*id.* ¶¶ 95, 97); and depriving MacPherson of notice and fair hearings

(*id.* ¶ 99).

Although the Town Defendants advance numerous arguments in support of

dismissal (Defs.' Mem. at 16-18), the Court finds a different basis for dismissal of Plaintiffs'

35

claims, namely that the *Younger* abstention doctrine precludes the Court from exercising

jurisdiction over claims that concern an ongoing state-court proceeding.  *See Younger v. Harris*,

401 U.S. 37 (1971); *Del Valle Hernandez v. U.S. Fam. Ct. of Bronx Cnty.*, 107 F.3d 2, at *1 (2d

Cir. Jan. 7, 1997) (unpublished) (noting that pursuant to the *Younger* doctrine, a federal court

should not "interfere with a state court").  "*Younger* abstention is mandatory when: (1) there is a

pending state proceeding, (2) that implicates an important state interest, and (3) the state

proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her

federal constitutional claims."  *Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d 65,

75 (2d Cir. 2003).

        In this case, each of the *Younger* conditions are satisfied.  First, Plaintiffs allege

that the state-court proceeding is ongoing.  Second, disputes concerning the ability of property

owners to rent their property implicate important state interests.  *See, e.g.*, *Morpurgo v. Inc. Vill.*

*of Sag Harbor*, 2007 WL 3375224, at *14 (E.D.N.Y. Oct. 11, 2007) ("I find here that 'important'

state interests are involved, namely, the ability of the state court to adjudicate the real property

rights of common tenants in, *inter alia*, partition actions."), *Report and Recommendation*

*adopted in relevant part*, 2007 WL 3355582 (E.D.N.Y. Nov. 8, 2007), *aff'd in part and vacated*

*on other grounds*, 327 F. App'x. 284 (2d Cir. 2009).  As to the third element, the Amended

Complaint does not contain any allegation that the state court proceedings will not afford the

opportunity for judicial review of the constitutionality of the Town's rental laws.  As the Second

Circuit has noted, "the Supreme Court [has] placed the burden of establishing the inadequacy of

state proceedings squarely on the party seeking to avoid abstention."  *Spargo*, 351 F.3d at 77

(citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 435-36 (1982)).

36

Accordingly, the Court must abstain from addressing Plaintiffs' claims regarding the pending state-court proceeding.

It is worth noting that Plaintiffs offer no argument in opposition to dismissal of Count IV and merely seek leave to amend the Amended Complaint should the Court find that dismissal of Count IV is warranted.  (Pls.' Mem. in Opp'n. at 15.)  Although the Court is inclined to deny Plaintiffs' request for leave to amend Count IV as it is highly unlikely that Plaintiffs can correct the deficiencies in their pleadings, the Court will grant Plaintiffs the opportunity to replead given Plaintiffs' request, as well as the fact that the Court relied upon case law and arguments not advanced by the parties in dismissing Plaintiffs' claims.

**X.**     ***Plaintiffs' Claim Based Upon Failure to Train and Supervise Governmental Employees is Dismissed (Count V)***

In Count V of the Amended Complaint, Plaintiffs allege that the Town and Town Board violated Plaintiffs' constitutional rights by failing to: (1) "train and supervise their governmental employees not to violate civil rights of Plaintiffs and persons in Plaintiffs' situation" (First Am. Compl. ¶ 106); (2) "adequately train code enforcement officers [and others] how to gather evidence and pass it along to the prosecutors to be analyzed at a time that is sufficiently prior to any arraignment and any criminal summons being issued" (*id.* ¶ 107); (3) "supervise their employees to ensure that they were implementing the training that they were provided" (*id.* ¶ 108); (4) ensure that attorneys who were "appointed and deputized to act on the [Suffolk County District Attorney's] behalf and on behalf of The People of the State of New York" received adequate training from the Suffolk County District Attorney (*id.* ¶ 110); and (5) teach Town employees to "provide advance[d] notice and opportunities to take remedial action

37

prior to charging property owners with violations of the New York State Uniform Fire

Prevention and Building Code" and "to know that 'season rental permit' laws . . . and the new

Rental Permit Law . . . cannot be written or enforced in [an unconstitutional] manner" (*id.* ¶ 113).

Plaintiffs also claim that "[t]he little training that has been provided is woefully inadequate."  (*Id.*

¶ 112.)

However, Plaintiffs' claims in Count V are virtually identical to claims asserted

by MacPherson and other plaintiffs in a similar and related federal court action pending before

this Court.  In that case, this Court held:

> In Count IV of the Amended Complaint, plaintiffs allege that the Town and
> Town Board have "deliberately and intentionally failed to train and supervise
> their governmental employees not to violate [the] civil rights of Plaintiffs and
> persons in Plaintiffs' situation." (Am. Compl.¶ 100.) "[A] claim of inadequate
> training will trigger municipal liability only where 'the failure to train amounts
> to deliberate indifference to the rights' of those with whom municipal employees
> will come into contact." *Walker v. City of New York*, 974 F.2d 293, 297 (2d
> Cir.1992) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197,
> 103 L. Ed. 2d 412 (1989)). The Second Circuit has "discern[ed] three
> requirements that must be met before a municipality's failure to train or
> supervise constitutes deliberate indifference to the constitutional rights of
> citizens." *Id.* A plaintiff must show: (1) "that a policymaker knows 'to a moral
> certainty' that her employees will confront a given situation," (2) "that the
> situation either presents the employee with a difficult choice of the sort that
> training or supervision will make less difficult or there is a history of employees
> mishandling the situation," and (3) "the wrong choice by the [municipal]
> employee will frequently cause the deprivation of a citizen's constitutional
> rights." *Id.* at 297–98.

*MacPherson v. Town of Southampton*, 2012 WL 928247, at *12 (E.D.N.Y. March 19, 2012).  In

dismissing the plaintiffs' claims in that case, this Court reasoned that:

> [P]laintiffs have alleged that defendants failed to train and supervise Town
> "code enforcement officers" to ensure that they properly investigated
> cases of suspected code violations. (Am. Compl.¶¶ 101, 102, 105–07.)

38

Plaintiffs further allege that defendants failed to train and supervise "employees in the Town Attorney's Office" to ensure that they did not prosecute code violations that "lack[ed] legal sufficiency." (*See id.* ¶ 102.) Assuming *arguendo* that the first two elements have been met here, the Court finds that plaintiffs have failed to allege that any "wrong choice" made by Town code enforcement officers or employees of the Town Attorney's Office in this context would "frequently cause the deprivation of a citizen's constitutional rights." *See Walker*, 974 F.2d at 298. If a charged Town Code violation is investigated and prosecuted but is ultimately found to "lack legal sufficiency," the result would generally be a simple dismissal of the charge. While it is not beyond the realm of possibility that an unfounded investigation or prosecution of a meritless code violation charge could result in some type of constitutional deprivation (such as a malicious prosecution or, as plaintiffs attempt to allege here, the deprivation of their physical property without due process), plaintiffs have not alleged that such events resulted with any frequency.

Plaintiffs allege that in September 2007 "Fire Marshal Christian Hansen" admitted that he may have erred in issuing a certain code violation against one of the North Sea Road properties. (Am. Compl.¶ 109.) Plaintiffs have not alleged, however, that Fire Marshal Hansen is a Town employee. In any event, the Court would not draw an inference of the Town's failure to train or supervise from this isolated incident because "'a simple recitation that there was a failure to train municipal employees,' buttressed only by the 'single incident alleged in a complaint' does not suffice to 'raise an inference of the existence of a custom or policy.'" *Rivera v. City of New York*, 2011 WL 5979210, at *4 (S.D.N.Y. Nov. 30, 2011) (quoting *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir.1993), *overruled on other grounds, Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 113 S. Ct. 1160, 122 L. Ed.2d 517 (1993)).

*Id.*

Applying similar reasoning to the facts of this case, the Court finds that the Plaintiffs here have also failed to allege that any "wrong choice" made by Town code enforcement officers or employees of the Town Attorney's Office will "frequently cause the

deprivation of a citizen's constitutional rights." *See Walker*, 974 F.2d at 298.  Additionally,

because Plaintiffs allege only a single instance in which Frano purportedly failed to serve a

written order to remedy prior to requesting a criminal summons, the Court will not draw an

inference that the Town had a custom or policy of inadequately training or supervising its

employees.

       As with Count IV, Plaintiffs have not provided any argument to oppose dismissal

of Count V, and merely seek leave to amend the Amended Complaint should the Court find that

dismissal of Count V is warranted.  (Pls.' Mem. in Opp'n. at 15.)  Although the Court is again

inclined to deny Plaintiffs' request for leave to amend Count V as it is highly unlikely that

Plaintiffs can correct the deficiencies in their pleadings, the Court will nonetheless grant

Plaintiffs the opportunity to replead Count V as well.

**XI.**    ***Plaintiffs' Claim Based Upon Common Law Indemnification is Dismissed (Count VI)***

       Plaintiffs claim that MacPherson is entitled to legal costs and expenses "incurred

in connection with his legal defense of any Justice Court criminal prosecution under the theory

of common law indemnification."  (First Am. Compl. ¶ 126.)  However, under New York law,

the common law "right to indemnification arises when one party is compelled to pay for the

wrong of another." *Twitchell v. Town of Pittsford*, 106 A.D.2d 903, 905 (4th Dep't 1984), *aff'd,*

66 N.Y.2d 824 (1985) (citing *D'Ambrosio v. City of New York*, 55 N.Y.2d 454, 460 (1982)).

"[A] cause of action for common-law indemnification can be sustained only if: (1) the party

seeking indemnity and the party from whom indemnity is sought have breached a duty to a third

person, and (2) some duty to indemnify exists between them."  *Perkins Eastman Architects, P.C.*

*v. Thor Eng'rs, P.A.*, 769 F. Supp. 2d 322, 329 (S.D.N.Y. 2011) (quoting *Highland Holdings &*

40

*Zito I, L.P. v. Century/ML Cable Venture*, 2007 WL 2405689, at *4 (S.D.N.Y. Aug. 24, 2007))

(internal quotation marks omitted).  As currently framed, Count VI does not state a cognizable

claim for relief under a theory of common law indemnification.  Accordingly, Plaintiffs' claim

seeking common law indemnification is dismissed.

**XII.**    ***Declaratory Relief (Count VII)***

      **A.**    ***Declaratory Relief as to the Rental Laws***

        In Count VII, Plaintiffs seek declarations that the Town's Old Seasonal Rental

Law and New Rental Properties Law are unconstitutional facially, and as applied, and that "it

would be unconstitutional for the JUSTICES to enforce or adjudicate cases brought under the

TOWN's new Rental Law because that law is unconstitutional."  (First. Am. Compl. ¶¶ 129, 130,

136).  However, the Court agrees with the Town Defendants that Plaintiffs' claim seeking a

declaration that the Town's Old Seasonal Rental Law is facially unconstitutional should be

dismissed as moot because the Old Seasonal Rental Law was repealed in its entirety in

September of 2007, and was replaced with the New Rental Properties Law which is subject to

the same challenges in this lawsuit.  *See Lamar Adver. of Penn, LLC v. Town of Orchard Park,*

*N.Y.*, 356 F.3d 365, 377 (2d Cir. 2004) (stating that a significant amendment or repeal of a

challenged statute that obviates the plaintiff's claims will ordinarily moot a litigation unless there

is "evidence that the defendant intends to reinstate the challenged statute after the litigation is

dismissed, or that the [defendant] does not believe that the [repeal] renders the case moot");

*Harrison & Burrowes Bridge Constructors, Inc. v. Cuomo*, 981 F.2d 50, 61 (2d Cir. 1992)

(stating that "[c]onstitutional challenges to statutes are routinely found moot when a statute is

amended").  Moreover, as discussed above, the Amended Complaint does not contain sufficient

41

allegations that either of the rental laws is unconstitutional as applied to Plaintiffs.  Even if the

Amended Complaint contained sufficient allegations that the Old Rental Properties Law, under

which MacPherson is being prosecuted, is unconstitutional as applied to him, the Court may not

declare that statute unconstitutional.  *See Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 509

(1972) (stating that "a federal court may not enjoin a pending state prosecution or declare invalid

the statute under which the prosecution was brought") (citations omitted).

Thus, the Court must only determine whether Plaintiffs' claims seeking a

declaration that the New Rental Properties Law is unconstitutional on its face, and,

correspondingly, a declaration that "it would be unconstitutional for the JUSTICES to enforce or

adjudicate cases brought under the TOWN's new Rental Law because that law is

unconstitutional" warrant dismissal.

Plaintiffs claim, *inter alia*, that they are entitled to a declaration that the New

Rental Properties Law is unconstitutional because: (1) it "precludes the issuance of a rental

permit unless" the permit application lists the names of all tenants (First Am. Compl. ¶ 46(A));

(2) the Town does not have a compelling interest in obtaining the names of tenants, nor has the

Town demonstrated that it has utilized the least restrictive means to achieve its goal (*id.* ¶ 46(B);

and (3) "[t]he revelation of such tenants' names, even if the owner-lessor could actually be

assured of learning them from the tenants . . . is 'inextricably intertwined' with the issuance of a

rental permit, without which a homeowner will be subject to multiple criminal misdemeanor

charges" (*id.* ¶ 46(C)).  However, the Town Defendants argue that the Plaintiffs lack standing to

assert the privacy rights of tenants (Defs.' Mem. at 21-22).  In response, Plaintiffs assert that the

required disclosure of tenants' names has already been declared unconstitutional in the case

42

*Anthony v. Town of N. Hempstead*, 2 A.D.3d 378 (2d Dep't 2003), and, therefore, Plaintiffs are

asserting their rights and "not just the tenants' rights to privacy."  (Pls.' Mem. in Opp'n. at 16.)

        "A federal court cannot pronounce any statute, either of a state or of the United

States, void, because irreconcilable with the constitution, except as it is called upon to adjudge

the legal rights of litigants in actual controversies."  *Baker v. Carr*, 369 U.S. 186, 204 (1962)

(quoting *Liverpool, N.Y. & Phila. Steam-Ship Co. v. Comm'rs of Emigration*, 113 U.S. 33, 39

(1885)) (internal quotation marks omitted).  "Whether a party has sufficient stake in an otherwise

justiciable controversy to obtain judicial resolution of that controversy is what has traditionally

been referred to as the question of standing to sue."  *Sierra Club v. Morton*, 405 U.S. 727, 731-

32 (1972); *see also Baker*, 369 U.S. at 206-07 (finding standing to sue where the party sought

"relief in order to protect or vindicate an interest of their own, and of those similarly situated").

        Assuming *arguendo* that Plaintiffs correctly argue that the New Rental Properties

Law unconstitutionally infringes upon the tenants' right to privacy according to the holding in

*Anthony*, Plaintiffs have nonetheless failed to establish standing to challenge the New Rental

Properties Law on that basis.  Plaintiffs have not alleged that they "ha[ve] suffered an 'injury in

fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or

hypothetical; . . .[and that] the injury is fairly traceable to the challenged action of the

defendant."  *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 915 F. Supp. 2d

574, 589 (S.D.N.Y. 2013).  "Federal courts as a general rule allow litigants to assert only their

own legal rights and interests, and not the legal rights and interests of third parties."  *Farrell v.

Burke*, 449 F.3d 470, 494 (2d Cir. 2006).  "This rule against third-party or *jus tertii* standing

helps to avoid unnecessary pronouncements and serves to ensure that the issues before the court

are concrete and sharply presented." *Id.* (quoting *Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 955 (1984)) (internal quotation marks omitted).  Although "the rule against *jus tertii* standing is not jurisdictional, [and] courts may create exceptions to it, the Court does not find that any such exception is presented here. *Id.*; *cf. Joseph H. Munson Co.*, 467 U.S. at 956 (recognizing an exception to general rule against third-party standing "[w]here practical obstacles prevent a party from asserting rights on behalf of itself").

    The New York Appellate Division, in *Anthony*, determined that a statute which required a permit application to contain the names, ages and relationships of tenants violated the *tenants'* right to privacy.  *Anthony*, 2 A.D.3d at 379.  *Anthony* does not, however, stand for the proposition that a landlord's right to privacy is violated by having to disclose tenants' names on a permit application, nor have Plaintiffs provided any basis to support their argument that providing tenants' names on a permit application causes injury to Plaintiffs.  *See Sierra Club*, 405 U.S. at 735 (stating that "the party seeking review must be himself among the injured"); *Palmieri*, 2006 WL 1155162, at *13 ("Plaintiff must rely on his own injury and not that of his residents.") (quoting *Puglisi v. Underhill Park Taxpayer Ass'n*, 947 F. Supp. 673, 694 (S.D.N.Y. 1996), *aff'd,* 125 F.3d 844 (2d Cir. 1997) (unpublished)) (internal quotation marks omitted).  Similarly, Plaintiffs' claim, that "unless an owner-lessor violates the tenants' constitutionally [sic] right of privacy to have their names omitted from rental permit application [sic], no permit will be issued" (First Am. Compl. ¶ 32(C)), alleges a violation of the tenants' right to privacy, not the Plaintiffs'.  Thus, Plaintiffs do not have standing to challenge the constitutionality of the New Rental Properties Law on the basis that it requires the disclosure of tenants' names.

44

Plaintiffs next claim that the New Rental Properties Law should be declared unconstitutional because its definition of "family" "impinges upon the right of a family to define itself in ways other than that provided in the local laws . . . by standards that are unconstitutionally vague and undefined, arbitrary and capricious," and "[t]he TOWN's 'rebuttable presumption' that four (4) or more persons living in a free-standing rented residence is a crime unless . . . [their] relationship is that of 'the functional equivalent of a family' . . . is an unconstitutional invasion of a constitutionally protected privacy interest and treats renters dissimilarly to owner-occupants and those whom they live."  (First Am. Compl. ¶ 46(D).)

Here, again, Plaintiffs lack standing to assert a facial challenge to the New Rental Properties Law on the basis of the law's definition of "family" because Plaintiffs have not alleged any cognizable injury of their own resulting from the law's definition of "family." Instead, the Amended Complaint alleges injury to the tenants in that the New Rental Properties Law "impinges upon the right of a family to define itself," and "inva[des] a constitutionally protected privacy interest [of renters]."  (First Am. Compl. ¶ 46(D).)

Plaintiffs also allege that the New Rental Properties Law should be declared unconstitutional as violating the Equal Protection Clause because: (1) "there is an absence of any rational basis in the record. . . [that] rent[ing] a free-standing single family residence to even one or two people poses any greater or special threat to the TOWN[ ] . . . than an overcrowded and misused owner-occupied house and the legislative intent appears to rest solely on an irrelevant prejudice against 'renters' " (First Am. Compl. ¶ 46(G)); (2) "lessor-owners' homes are being subjected to arbitrarily imposed greater scrutiny and stricter more updated building code requirements than non-lessors' homes" (*id.* ¶ 46(H)); and (3) owner-lessors must "pay licensed

45

professionals to perform expensive renovations and to pay fees in order to obtain a professional 'certification' that there is 'full compliance' with all of the TOWN's current codes when the neighboring owner-occupied properties are not held to the same standards" (*id.* ¶ 46(I)).[10]

However, as discussed *supra*, "[t]he general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *Cleburne*, 473 U.S. at 440. Here, the town has a legitimate interest in "the safety of its residents who live in rental properties." *Palmieri*, 2006 WL 1155162, at *7. Thus, because the New Rental Properties Law's classification based upon rental status is rationally related to the Town's legitimate interest in the safety of renters, Plaintiffs' facial attack on equal protection grounds fails. *See also Marcavage*, 826 F. Supp. 2d at 744-45 (dismissing equal protection challenge to law "requir[ing] an inspection of owner-occupied residences in building also containing rental units, [but not] residences unattached to any rental property" where state's interest was "to protect and promote the public health, safety and welfare of its citizens").[11]

Plaintiffs further claim that the New Rental Properties Law's requirement that a rental permit applicant designate the Town Clerk as an agent for process violates "Due Process and Access to the Courts" by requiring a lessor-owner to "surrender his/her/its right to receive actual direct 'notice' of a misdemeanor charge by personal delivery." (First Am. Compl. ¶ 46(M), (N).) Specifically, Plaintiffs argue that New York Criminal Procedure law "requires

---

[10] While Plaintiffs appear to allege an Equal Protection challenge in paragraph 46(J) of the First Amended Complaint, the Court is unable to determine the nature of Plaintiffs' claim as it is so poorly framed.

[11] To the extent that paragraphs 46(H) and (I) of the Amended Complaint challenge the New Rental Properties Law as requiring warrantless inspections, the Court dismisses those challenges for the reasons discussed *supra*.

46

personal service of a criminal summons on a person and on a corporation."  (Pls.' Mem. in

Opp'n. at 20.)

Plaintiffs' claim is flawed in numerous respects.  First, Plaintiffs appear to

confuse personal service with personal delivery.  Although the Amended Complaint states that

lessor-owners have a "right" to receive service by personal delivery (First Am. Compl. ¶ 46(N)),

the basis for their argument is purportedly found in the Criminal Procedure Law which, Plaintiffs

argue, "requires personal service of a criminal summons."  (Pls.' Mem. in Opp'n. at 20).

However, personal delivery is only one method of personal service.  *See People v. Turkel*, 130

Misc. 2d 47, 48 (Crim. Ct. N.Y. Cnty. 1985) (observing that personal service includes "1.

[p]ersonal delivery; 2. delivery and mail; 3. service upon a designee; 4. substituted service and;

5. expedient service") (quoting N.Y. CPLR 308) (internal quotation marks omitted).  Thus, the

New Rental Properties Law provides for personal service by means of service upon a designated

agent, i.e., the Town Clerk. Additionally, as pointed out by the Town Defendants (Defs.' Mem.

at p. 32-33 n. 4), the New Rental Properties Law provides the option of choosing between the

Town Clerk or a person, firm or corporation having an actual place of business, dwelling place,

or usual place of abode located within the boundaries of the Town of Southampton as a

designated agent to receive service. [12]

Furthermore, contrary to Plaintiffs' claim that New York Criminal Procedure Law

requires personal service of a criminal summons, "there is no provision in [New York Criminal

_____

[12] The Court notes that the Amended Complaint also alleges that the Criminal Procedure Law requires "personal delivery of a criminal summons" (First Am. Compl. ¶ 46(P)) and, therefore, Plaintiffs' augment in their opposition papers that the Criminal Procedure Law requires "personal service" may have been error.  Nonetheless, Plaintiffs' claim fails because, as discussed below, the Criminal Procedure Law does not contain a requirement that service be effected upon a defendant by personal delivery.

47

Procedure Law directing the] method of service of a criminal summons upon a natural person."

*Turkel*, 130 Misc. 2d at 47; *see also People v. Mancuso*, 10 Misc. 3d 1055(A), at *1 (City Ct. of

Buffalo July 13, 2001) (unpublished) (stating that the "Criminal Procedure Law . . . is silent as to

how a summons is to be served" and finding "nail and mail" service of summonses for alleged

housing code violations to be proper service of process).  In addition, Criminal Procedure Law §

600.10(1) provides that service of process upon a corporate defendant in a criminal action "may

be effectuated by the issuance and service of a summons or an appearance ticket by delivery to

any agent of such corporation authorized by appointment or by law to receive service of

process."  *People v. J & L Landscaping, Inc.*, 12 Misc. 3d 1187(A), at *1 (Crim. Ct. Kings Cnty.

July 28, 2006) (unpublished).  Therefore, New York Criminal Procedure Law does not prohibit

service upon the Town Clerk as the designated agent for an individual defendant, and, contrary

to Plaintiffs' claim, expressly permits service upon a corporation's agent who is authorized by

appointment or law.  Accordingly, Plaintiffs incorrectly argue that the New Rental Properties

Law contravenes New York Criminal Procedure Law's service requirements.

The Court observes that in addition to the above-mentioned grounds alleged by

Plaintiffs in support of a declaration that the New Rental Properties Law is facially

unconstitutional, the Amended Complaint lists several other grounds that have not been

addressed by either party upon this motion.  However, Plaintiffs' Amended Complaint

constitutes an endless litany of claimed constitutional violations which, more often than not, are

unintelligible and perplexing.  The Town Defendants, who have sought to eliminate Plaintiffs'

numerous grounds in support of a declaration, have not addressed Plaintiffs' additional grounds

in support of a declaration found in paragraphs 46(E), (F), (G), (K), (L), (N), (O), (Q), (R), (S),

48

and (T) of the Amended Complaint, presumably because of the convoluted nature of Plaintiffs'

claims.  For example, the Court is confounded by Plaintiffs' claim that "[t]he TOWN's stated

reasons for promulgation for such legislation is 'not suitably tailored to serve a compelling state

interest' insofar as there was no *bona fide* comprehensive study or plan by the TOWN that ever

indicated through objectively collected data that non-owner-occupied residential units are any

less overcrowded, any less dangerous, any less violative of various State and Town laws . . . ."

(*Id.* ¶ 46(E).)  The Court is unaware of nor have Plaintiffs provided any legal support for

Plaintiffs' claim that a government's legislative intent in promulgating a statute, rather than the

legislation itself,[13] must somehow be "suitably tailored."  Similarly, it is unclear to the Court

how the New Rental Properties Law violates the Commerce Clause and the Privileges and

Immunities Clause, as Plaintiffs claim.  (*Id.* ¶ 46(L).)  Moreover, the fact that Plaintiffs do not

address in their opposition papers their additional bases in support of a declaration suggests to

the Court that Plaintiffs have abandoned those alleged bases.  Nonetheless, in the exercise of its

discretion, the Court will grant Plaintiffs leave to amend their Amended Complaint to reframe

and clarify their additional allegations if, in fact, Plaintiffs maintain that those unaddressed bases

provide support for a declaration that the New Rental Properties Law is facially unconstitutional.

**B.**     ***Declaratory Relief as to the Town's "Copy Cat" Law***

Here, Plaintiffs seek a declaration that the Town's local law, Code § 123-1 (the

"copy cat" ordinance), which adopts the State's Fire Prevention and Building Codes, is

unconstitutional facially and as applied because it fails to "provid[e] notice and an opportunity to

---

[13] The Court notes that even if Plaintiffs intended to allege a strict scrutiny standard of review, that standard is not applicable in this case since Plaintiffs have not alleged the implication of any liberty or property interest of their own.

49

remedy." (First Am. Compl. ¶ 131.) Plaintiffs further claim that § 123-1 " 'bootstraps' a state

law . . . into a profitable TOWN code . . . designed to siphon monies from the State's coffers into

its own." (*Id.* ¶ 63.)

Plaintiffs' basis for a declaration is founded upon alleged procedural and

substantive due process violations. (*See* First Am. Compl. ¶¶ 61-63.) However, as discussed

above, because Plaintiffs have failed to allege the deprivation of a constitutionally protected

liberty or property interest, their due process claims are unavailing. *See Roth*, 408 U.S. at 570-71

(stating that a determination of "whether due process requirements apply in the first place [calls

for the Court to] look . . . to the nature of the interest at stake . . . to see if the interest is within

the Fourteenth Amendment's protection of liberty and property"). Thus, Plaintiffs' claim is

dismissed.

### C.     *Declaratory Relief as to the Town's Prosecutions*

Plaintiffs also seek declarations declaring that the Town's "current plan of

prosecution of violations of its local laws by its own TOWN's [sic] attorneys violates the Due

Process rights of criminal defendants because it is so fraught with conflicts as to be

fundamentally unfair and unconstitutional" (*id.* ¶ 132), and "any prosecution of a criminal

violation before the JUSTICES by any attorney who has not been pre-designated by the Attorney

General of Suffolk County District Attorney [sic] Spota and filed an oath in the County Clerk's

records is a violation of Due Process" (*id.* ¶ 133). However, since neither party has addressed

these claims in the moving papers nor have the Town Defendants sought dismissal of these

claims, these claims will not be dismissed in response to the current motion.

50

### XIII. *Injunctive Relief (Count VIII)*

Plaintiffs seek injunctive relief:  (1) "requiring that Defendants provide training to all of its code and law enforcement officers, including prosecutors, to teach them the constitutionally adequate procedures in connection with enforcement of the alleged pool fencing and pool gate enclosure violations" (*id.* ¶ 138); (2) preventing the enforcement of the Town's Old Seasonal Rental Law until its constitutionality has been determined by the Court (*id.* ¶ 139); (3) preventing enforcement of the Town's New Rental Properties Law, as well as adjudication of any cases brought pursuant to same, until its constitutionality has been determined by the Court (*id.* ¶ 140); (4) preventing "the TOWN's manner of issuing criminal summonses for alleged violations of the 'copy cat' local ordinances" until its constitutionality has been adjudicated (*id.* ¶ 141); and (5) "requiring Defendants to submit to . . . monitoring by the New York State Attorney General['s] Office" (*id.* ¶ 143).

The Town Defendants seek dismissal of only Plaintiffs' claim seeking injunctive relief enjoining pending prosecutions pursuant to the Old Seasonal Rental Law.  (Defs.' Mem. at 38.)  Since the Court agrees with the Town Defendants that, as noted above, the *Younger* abstention doctrine and its progeny prohibit this Court from exercising jurisdiction over matters concerning ongoing state-court proceedings, to the extent Plaintiffs seek to enjoin pending prosecutions under the Old Seasonal Rental Law, their claim is dismissed.  For the same reason, to the extent Plaintiffs seek to enjoin pending prosecutions under the New Rental Properties Law, that claim is dismissed as well.  Furthermore, since the Court finds that the New Rental Properties Law is facially constitutional, Plaintiffs' claim seeking injunctive relief enjoining

51

future enforcement of the New Rental Properties Law is dismissed.[14]  However, since the Town

Defendants do not seek dismissal of Plaintiffs' other claims for injunctive relief in Count VIII of

the Complaint, those claims will not be dismissed.

*CONCLUSION*

For the foregoing reasons, the motion by the Town Defendants to dismiss the First

Amended Complaint is GRANTED in part and DENIED in part.  Dismissal is denied as to those

claims in Counts VII and VIII for which the Town Defendants did not provide arguments in

support of dismissal.  Plaintiffs shall file a Second Amended Complaint in accordance with this

decision by December 16, 2013.

**SO ORDERED**

Dated: Central Islip, NY
       November 14, 2013

_____/s/_____
Denis R. Hurley
Unites States District Judge

---

[14] Although the Court also finds that the Old Seasonal Rental Law is facially constitutional, because that law has been repealed, any claim for injunctive relief sought by Plaintiffs to enjoin its future enforcement has been rendered moot.